IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT WILLIAM TEAR § <br> § <br> Petitioner, § <br> § <br> VS. § <br> § NO. 3-06-CV-1893-O <br> RICK THALER, Director § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division § <br> § <br> Respondent. § | |

## SUPPLEMENTAL FINDINGS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Robert William Tear, a Texas prisoner, challenges his conviction for aggravated sexual assault of a child in an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In three grounds for relief, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) failed to subpoena MaLisa Fyffe, a speech therapist, to testify about the child's expressive disorder; (2) did not call Linda Scott, a pediatric nurse, who would have supported petitioner's medical care defense; and (3) did not object to the expert testimony of Suzanne Faulkner, a clinical therapist. On the recommendation of the magistrate judge, the district court denied post-conviction relief. *Tear v. Quarterman*, No. 3-06-CV-1893-O, 2009 WL 1009953 (N.D. Tex. Apr. 10, 2009). In so doing, the court determined that petitioner failed to properly exhaust one of the arguments made in his third ground for relief--that counsel was ineffective for not objecting to Faulkner's testimony regarding the truthfulness of child sex abuse victims in general and the victim in particular. *Id.*, 2009 WL 1009953 at *10 n.4. After petitioner timely perfected an appeal, the court realized that this argument was, in fact, properly exhausted. At the request of the court, the

Fifth Circuit remanded the case for further proceedings. *Tear v. Quarterman*, No. 09-10415 (5th Cir. Jul. 7, 2009). Both sides have been given an opportunity to re-brief petitioner's claim involving Faulkner's testimony, and this ground for relief is ripe for determination.

The relevant facts are set forth at length in the magistrate judge's prior recommendation. *See Tear*, 2009 WL 1009953 at *2-5. Succinctly stated, petitioner was charged in a two-count indictment with the aggravated sexual assault of his four-year-old son. The first count alleged that petitioner digitally penetrated the child's anus. The second count alleged that petitioner placed his mouth on the child's penis. One of the witnesses who testified for the state was Suzanne Faulkner, a clinical therapist at the Denton County Children's Advocacy Center. Faulkner interviewed the child after his foster mother, Kathleen Hoffman, reported her suspicions of sexual abuse. At their first meeting, the child told Faulkner that his father "stuck his finger in his butt using KY Jelly." (*See* SF-II at 125). In later sessions, the child volunteered additional information that led Faulkner to conclude he had been sexually abused. Faulkner testified that:

> [The child] told me that his father had made a mistake, that he had touched him all over his body. He told me that his father had touched him with a vibrator on his stinka stinka, which is what he calls his penis, and on his butt. And, he also said that his father had put his penis in his mouth and drank his pee pee.

(*Id.* at 127-28). On cross-examination, petitioner's attorney, Julie Jones, asked Faulkner if a four-year-old child with the mental capacity of a three-year-old "sometimes has a hard time with blending fantasy and reality[.]" (*Id.* at 139). Faulkner responded, "Research shows that children do not lie about sexual abuse." (*Id.*). Upon further questioning by defense counsel, Faulkner explained:

> Kids will often make up stories, make up fantasy things that they wish would come true. Things that they want to happen. But, *they rarely make up stories about things that are not true, like sexual abuse*. The times that children lie, research shows is when they are trying to protect a parent, get out of trouble or if they are playing a game.

(*Id.* at 139-40) (emphasis added). On re-direct, the prosecutor inquired:

> Q. [BY PROSECUTOR]: And so, with you [sic] first meeting with [the child], did you still lay down the law that it is important to tell the truth?
>
> A. Yes, I tell all of my kids that at the beginning of every session.
>
> Q. And, then as time developed over your meetings with [the child], *did you make a determination that he could tell the difference between a truth and a lie?*
>
> A. *Yes, I did.*
>
> Q. Was it important for you to meet with him more than once or twice to make a full assessment on him?
>
> A. Yes, definitely.

(*Id.* at 142-43) (emphases added). Petitioner now contends that his attorney was ineffective for failing to object to this testimony because Texas law does not permit an expert to testify about the truthfulness of child sex abuse victims. (*See* Am. Fed. Writ at 30-31).[1]

Petitioner correctly notes that an expert may not express a "direct opinion" regarding the truthfulness of allegations of sexual abuse. *See Yount v. State*, 872 S.W.2d 706, 709-10 (Tex. Crim. App. 1993). However, expert testimony may be permitted to attack a witness's general capacity or disposition to tell the truth. *See Schutz v. State*, 957 S.W.2d 52, 69-70 (Tex. Crim. App. 1997). "General capacity evidence includes whether a person can distinguish between reality and fantasy and/or whether the person's physical or mental condition adversely affects a person's ability to

---

[1] Petitioner also criticizes his attorney for failing to object to Faulkner's qualifications to give expert testimony regarding the behavior of child sex abuse victims. The magistrate judge rejected that argument in his prior recommendation, and declines to revisit that aspect of petitioner's ineffective assistance of counsel claim. *See Tear*, 2009 WL 1009953 at *10 (explaining why Faulkner, who has a masters degree in psychology, worked at the Denton County Children's Advocacy Center for three years, and treated between 50-100 children for problems related to sexual abuse, was qualified to testify as an expert under Texas law).

accurately perceive and/or relate events." *Id.* Assuming that Faulkner's testimony was "direct opinion" evidence regarding the truthfulness of child sex abuse victims, the court determines that petitioner was not prejudiced by counsel's failure to object to such testimony.

"To demonstrate prejudice, a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009), *quoting Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. *Id., quoting Strickland*, 104 S.Ct. at 2068. The ultimate focus of the prejudice inquiry is on "the fundamental fairness of the proceeding whose result is being challenged." *Virgil v. Dretke*, 446 F.3d 598, 612 (5th Cir. 2006), *quoting Strickland*, 104 S.Ct. at 2069. The court looks to "ferret[ ] out 'unreliable' results caused by 'a breakdown in the adversarial process that our system counts on to produce just results.'" *Id., quoting Strickland*, 104 S.Ct. at 2069. While the test for prejudice is not simply whether there was sufficient evidence to convict the petitioner, "the strength of the incriminating evidence informs the determination of prejudice." *Bustamante v. Quarterman*, 284 Fed.Appx. 183, 188, 2008 WL 2645676 at *5 (5th Cir. Jul. 7, 2008), *citing Williams v. Taylor*, 529 U.S. 362, 398, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000).

Here, petitioner was charged with two counts of aggravated sexual abuse of child. The act charged in the first count--digital penetration of the child's anus--was not contested by petitioner. During her closing argument, defense counsel acknowledged that petitioner touched the child's anus with his finger, but asked the jury to believe that it was done for medical purposes. (*See* SF-III at 13-14). Indeed, the evidence adduced at trial, including the child's own testimony, supported a

medical care defense, which was included in the court's charge to the jury.[2] When asked by the prosecutor if petitioner had done "bad things" to him, the child responded:

> Well, he put KY Jelly in my bow-bow and that didn't hurt so, he asked to do that to doctor me, because my daddy is a doctor.
>
> Q. [BY PROSECUTOR]: Oh, he is?
>
> A. Yeah, he is.
>
> Q. And, how did he put KY Jelly in your bow-bow?
>
> A. Well, he had some medicine in the refrigerator, so he got it out and put it in my bow-bow.
>
> Q. What part of his body did he use to put the KY Jelly in?
>
> A. His hand.
>
> Q. His hand?
>
> A. Yeah.
>
> Q. What part of his hand, can you point at my hand?
>
> A. He uses it like this.
>
> Q. Like that?
>
> A. Yeah, and it was that small.
>
> * * * *
>
> Q. Did you feel it?

---

[2] The jury was instructed:

> It is a defense to prosecution that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth of the actor. If you find from the evidence, that the defendant's conduct, if any, consisted of medical care for [the child], and did not include any contact between the anus or sexual organ of the child and the mouth of the defendant, Robert William Tear, then you will find the defendant not guilty of the offense in Count One herein.

(St. App. Tr. at 25).

> A. Yeah, it didn't hurt.
>
> Q. It didn't hurt?
>
> A. Yeah, my bow-bow didn't hurt.
>
> Q. Did it go all the way in your bow-bow, though?
>
> A. Yeah.

(SF-II at 41-42). Dr. Patricia Wheelahan, a pediatrician, testified that she might prescribe Phenergan suppositories for children when they experience vomiting, and might recommend FeverAll suppositories for children with high fever. (*Id.* at 168-77). Although Dr. Wheelahan did not believe that she had ever prescribed Phenergan suppositories for the child, she may have recommended FeverAll and did prescribe Nystatin ointment, which is applied "with your finger around the anus." (*Id.* at 171, 177-78). Because petitioner did not contest that he digitally penetrated the child's anus, but instead argued that the touching was done for the purposes of medical treatment, the child's credibility regarding this outcry statement was not at issue.

With respect to the second allegation of sexual abuse--that petitioner placed his mouth on the child's penis--there was conflicting evidence presented at trial about statements made by the child. In his testimony before the jury, the child denied that petitioner ever touched him with his mouth. (*See id.* at 44-45). However, Faulkner testified that the child told her that "his father had put his penis in his mouth and drank his pee pee." (*Id.* at 127). In finding petitioner guilty, the jury implicitly found that the child did not testify truthfully at trial about this alleged act of sexual abuse. The jury could not have made such a determination by relying on Faulkner's testimony that "children do not lie about sexual abuse," and that petitioner's four-year-old son could tell the difference between the truth and a lie. Instead, the jury had to make its own assessment of the child's

credibility. In view of this evidence, petitioner cannot show that his conviction probably resulted from counsel's failure to object to Faulkner's testimony.

## RECOMMENDATION

For these reasons, together with the reasons stated by the magistrate judge in his recommendation dated May 1, 2008, petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 4, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE